UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMES E SANICKI, JR,

                Petitioner,

                                                    Case No. 14-cv-0005-bhl

    v.

JEFFREY PUGH,
REED RICHARDSON,

                Respondents.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

      Petitioner James E. Sanicki, Jr., who is currently serving a life sentence for murder, seeks a writ of habeas corpus under 28 U.S.C. §2254. (ECF No. 1.) Sanicki was convicted in December 1991 of first-degree intentional homicide in Marinette County Circuit Court. He has a long history of attempts to challenge his conviction in state court, but his initial efforts were thwarted by the ineffective performance of his post-conviction counsel. Then, after nearly two decades of proceedings, the state circuit court reinstated Sanicki's post-conviction and appellate rights in full. (ECF No. 1-3 at 56-65.) After reinstating these rights, the circuit court addressed and rejected Sanicki's request for post-conviction relief on the merits. (*Id.* at 66-74.) The Wisconsin Court of Appeals later affirmed the circuit court's ruling, *State v. Sanicki*, 816 N.W.2d 350 (Wis. Ct. App. 2012) (per curiam) (unpublished table decision), and the Wisconsin Supreme Court denied review, *State v. Sanicki*, 822 N.W.2d 881 (Wis. 2012) (table). Sanicki then filed a habeas corpus petition in this Court.

      Sanicki's petition identifies five grounds for habeas relief. (ECF No. 1.) He first complains about the selection of his jury, including the seating of allegedly biased jurors and a mistake concerning the number of peremptory strikes. (*Id.*) Second, he challenges allegedly confusing jury instructions related to a "party to a crime" charge in the Criminal Information by which he was charged. (*Id.*) Third, Sanicki argues that his trial counsel was constitutionally ineffective. (*Id.*) Fourth, he objects to the trial judge's imposition of a life sentence and remote parole

eligibility date following his conviction. (*Id.*) Fifth and finally, Sanicki asserts that his trial was a miscarriage of justice warranting a new trial under state law. (*Id.*) The parties have briefed the issues and, based on the record, the Court denies Sanicki's habeas petition, dismisses the case, and declines to issue a certificate of appealability.

## BACKGROUND

In July 1991, Sanicki and his associate, James Behnke, were charged in the shooting death of Michael Smith, an acquaintance who was staying at their apartment. *Sanicki*, 816 N.W.2d at *1. Behnke's story concerning the murder changed over time. He first told law enforcement that he had acted alone in killing Smith, but later said Sanicki had helped him dispose of the body. *Id.* At Sanicki's trial, Behnke offered a third version of events, testifying that Sanicki was in fact the shooter. *Id.* By the time of Sanicki's trial, Behnke had already pleaded guilty and been sentenced to life in prison for being a party to the Smith murder. (ECF No. 9-8 at 120.)

### A. Sanicki's State Court Trial Proceedings

Sanicki's trial began on December 9, 1991. (ECF No. 9-8 at 1, 6.) During voir dire, the judge asked if any of the potential jurors "were related by blood or marriage to anyone involved in law enforcement." (*Id.* at 10.) Multiple jurors answered affirmatively, including Juror Lee Jaeger. (*Id.* at 12.) After the court informed him that the murder victim was not in law enforcement, Jaeger confirmed that his familial ties to law enforcement would not affect him during the trial. (*Id.* at 13.) Later, during the prosecution's voir dire, jurors were asked whether any of them had a "weak stomach or for some reason would feel uncomfortable with [gory and graphic] testimony." (*Id.* at 20-21.) Based on the responses, the court struck one potential juror for cause after the juror confirmed that gory and graphic evidence would prevent him from rendering a fair and impartial verdict. (ECF No. 9-8 at 20.) A second juror, Karyl Tutaj, reported that she had fainted once in high school while watching a movie that showed a car accident. (*Id.* at 21.) After the prosecutor told her that there would be no movies or photographs, only oral testimony, she confirmed that testimony alone would not affect her ability to render a fair and impartial verdict. (*Id.*) Tutaj was allowed to remain on the panel. (*Id.*) After Sanicki's counsel completed his voir dire questions, the court moved on to peremptory challenges and granted each party six peremptory strikes. (*Id.* at 44.) Neither party struck jurors Jaeger and Tutaj, and both remained on the jury through the verdict. (ECF No. 9-8.)

During the trial, seventeen witnesses testified for the prosecution, including Behnke. (ECF No. 9-8.) Despite previously telling law enforcement officers that he had acted alone, and then that Sanicki had only helped him move the body, Behnke testified at trial that Sanicki was the one who pulled the trigger. (*Id.* at 127.) Delilah Wons, Thomas Lanthier, and Walter Behnke—the brother of James Behnke—also testified that Sanicki had admitted to shooting Smith. (ECF No. 9-9 at 14, 97-98, 223-24.)

The presentation of evidence concluded on December 13, 1991. (ECF No. 9-8, 9-10.) Counsel, without Sanicki present, and the judge discussed jury instructions and the exhibits the jury would take with them to the deliberation room. (ECF No. 9-10 at 265-78.) At the beginning of the trial, the judge began voir dire by saying, "The [I]nformation in this case charges that . . . the defendant did, as a party to the crime, cause the death of another human being with intent to kill that person." (ECF No. 9-8 at 8.) After presentation of the evidence, however, the trial judge agreed with Sanicki's counsel that the jury should not be given a "party to a crime" instruction. (ECF No. 9-10 at 266-70.) The trial court concluded, over the prosecutor's objection, that the government's evidence pointed only to Sanicki as the shooter, making the "party to a crime" instruction inapplicable. (ECF No. 9-10 at 267-70.) The court did not allow the "party to a crime" jury instruction. (*Id.*)

Late that evening, the jury arrived at a verdict and convicted Sanicki of first-degree intentional homicide. (*Id.* at 376.) On December 18, 1991, after statements by Sanicki and the victim's mother, the circuit court sentenced Sanicki to life imprisonment and set a parole eligibility date of January 1, 2075. (ECF No. 9-11.)

**B.    Sanicki's Post-Trial and State Appellate Court Proceedings**

Sanicki's state court post-conviction efforts lasted for nearly two decades. In 2010, after a series of unsuccessful post-conviction motions and appeals, the circuit court agreed with Sanicki that he had received ineffective assistance from two different post-conviction counsel and reinstated Sanicki's appellate rights. (ECF No. 1-3 at 56-65.) After allowing Sanicki a procedural "do-over," the same circuit court judge then reviewed and rejected Sanicki's post-conviction arguments on their merits. (*Id.* at 66-74.) Among other issues, the circuit court considered and rejected Sanicki's complaints about jury selection, including the peremptory strikes process, and his arguments that his trial counsel had been constitutionally ineffective. (*Id.*)

Sanicki appealed the circuit court's ruling to the Wisconsin Court of Appeals, which then also considered and rejected his claims on the merits. *Sanicki*, 816 N.W.2d 350. The Wisconsin Supreme Court denied Sanicki's petition for discretionary review on September 27, 2012. *Sanicki*, 822 N.W.2d 881.

Sanicki then commenced this federal habeas proceeding. The Court screened Sanicki's petition on January 24, 2014 and ordered the respondent to file an answer. (ECF No. 4.) The respondent filed an answer and attached the relevant state court records on March 25, 2014. (ECF No. 9.) On November 8, 2016, Sanicki filed a supporting brief. (ECF No. 16.) On February 24, 2017, the respondent filed a brief opposing the petition, and on March 28, 2017, Sanicki filed his reply brief. (ECF Nos. 20, 22.)

## LEGAL STANDARD

A person in state custody may petition a federal court for a writ of habeas corpus under 28 U.S.C. §2254. Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), does not allow defendants to use "federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). A federal court may only grant habeas relief if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or, was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d); *Woods v. Donald*, 575 U.S. 312, 315 (2015). "Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law." *Wilson v. Corcoran*, 562 U.S. 1, 1 (2010) (per curiam).

A state court decision is "contrary to . . . clearly established Federal law" if the state court did not apply the proper legal rule, or, in applying the proper legal rule, reached the opposite result as the Supreme Court on "materially indistinguishable" facts. *Brown v. Payton*, 544 U.S. 133, 141 (2005) (quoting 28 U.S.C. §2254(d)(1)) (other citations omitted). "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)) (emphasis in original). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citing *Williams*, 529 U.S. at 410). "The state court's application of clearly established [federal] law must be objectively

unreasonable." *Id.* (citing *Williams*, 529 U.S. at 409). "If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

## ANALYSIS

Because the Wisconsin Court of Appeals considered and ruled on the merits of all of Sanicki's claims, this Court can grant habeas relief only if the Wisconsin Court of Appeals failed to reasonably apply clearly established federal law as determined by the Supreme Court of the United States. For each claim, as discussed in detail below, the Wisconsin Court of Appeals reasonably applied federal law. Accordingly, Sanicki's petition must be denied.

### I. The Wisconsin Court of Appeals Did Not Err When It Rejected Sanicki's Challenge to Jury Selection.

Sanicki's first ground for habeas relief asserts errors in the jury selection process at his trial. (ECF Nos. 1 at 6-7; 1-2 at 2.) He argues the state courts unreasonably rejected his arguments about juror bias and the trial court's error in allowing only six, as opposed to seven, peremptory strikes. Because the record confirms that the Wisconsin Court of Appeals did not unreasonably or erroneously apply federal law in rejecting these arguments, this ground for habeas relief fails.

#### A. The Wisconsin Court of Appeals Did Not Err in Rejecting Sanicki's Juror Bias Arguments.

Sanicki argues that jurors Jaeger and Tutaj should not have been allowed on the jury because they were actually biased against him. (ECF No. 16 at 9-11.) With respect to Jaeger, Sanicki asserts that the juror's relationship with multiple law enforcement officers should have been explored more thoroughly by the court and speculates that Jaeger may "have given undue credit to law enforcement officers' credibility or reliability." (ECF No. 16 at 14.) As for Tutaj, Sanicki insists her "weak stomach" made her incapable of serving as a juror during a murder trial. (*Id.* at 11.) The Wisconsin Court of Appeals found that Sanicki had failed to establish the bias of

either juror. *Sanicki*, 816 N.W.2d at *2. Given the record, this was not an unreasonable conclusion.

Sanicki is correct that he was entitled to an impartial jury but is wrong in insisting that the record shows he did not receive one. "[D]ue process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." *Morgan v. Illinois*, 504 U.S. 719, 727 (1992); *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988) (citations omitted) ("It is well settled that the Sixth and Fourteenth Amendments guarantee a defendant on trial for his life the right to an impartial jury."). An impartial jury is one that determines guilt on the basis of the judge's instructions and the evidence introduced at trial, as distinct from preconceptions or other extraneous sources of decision." *Oswald v. Bertrand*, 374 F.3d 475, 477 (7th Cir. 2004) (citing *Morgan*, 504 U.S. at 726; *Patton v. Yount*, 467 U.S. 1025, 1037 n.12 (1984); *Irvin v. Dowd*, 366 U.S. 717, 721-23 (1961); *United States v. McClinton,* 135 F.3d 1178, 1185-86 (7th Cir. 1998); *United States v. Angiulo,* 897 F.2d 1169, 1182-83 (1st Cir. 1990)). "[P]art of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors." *Morgan*, 504 U.S. at 729. "Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." *Id.* at 729-30 (quoting *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) (plurality opinion)).

The record shows that the trial judge engaged in a reasonable voir dire process before allowing the two challenged jurors to remain in the pool. That process included follow-up questioning and discussions with both potential jurors, after which they confirmed they could serve impartially. Jaeger confirmed that his familial ties to law enforcement would not affect him during the trial. Similarly, after raising concerns about having a "weak stomach," and being told there would be no gory or graphic movies or photographs, only oral testimony, Tutaj confirmed she could render a fair and impartial verdict. Sanicki's insistence that the trial court should have conducted further inquiries and "delved deeper" misunderstands the applicable law and the realities of jury selection. The Supreme Court has emphasized that trial courts have substantial discretion in this area, explaining there is "[n]o hard-and-fast formula [that] dictates the necessary depth or breadth of *voir dire*." *Skilling v. United States*, 561 U.S. 358, 386 (2010) (citing *United States v. Wood*, 299 U.S. 123, 145-46 (1936)). "Jury selection, we have repeatedly emphasized,

is 'particularly within the province of the trial judge.'" *Id.* (quoting *Ristiano v. Ross*, 424 U.S. 589, 594-95 (1976) (other citations omitted)). The Wisconsin Court of Appeals' conclusion that the record failed to show bias was reasonable.

### B. Sanicki's Peremptory Strike Complaints Do Not Warrant Habeas Relief.

Sanicki also argues that his Sixth Amendment rights were violated when the trial court allowed him (and the prosecution) only six peremptory challenges even though state law mandated that seven strikes be allowed. (ECF No. 16 at 15-16.) He insists that this deviation from the state law requirements requires reversal, even absent a showing of prejudice. (*Id.* at 16.) The Wisconsin Court of Appeals acknowledged that the trial court contravened state law requirements, but concluded that, because both parties received only six strikes, and because hindsight did not allow a determination of which jurors would have been struck, the error was harmless. *Sanicki*, 816 N.W.2d at *1-2. This was not an unreasonable application of federal law.

In *Rivera v. Illinois*, the Supreme Court held that "the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution." *Rivera*, 556 U.S. 148, 158 (2009). This holding disposes of Sanicki's claim. *See also Winston v. Boatwright*, 649 F.3d 618, 629 (7th Cir. 2011) (citing *Rivera*, 556 U.S. at 159-62) ("*Rivera* distinguishes between the remedy required for an ordinary error in the denial of a peremptory challenge and the kind of constitutional error that occurs when a juror is excluded on racial grounds. In the former case, harmless error analysis is proper, and the court must decide whether the jurors who actually sat were qualified and unbiased."). At most, the trial court's mistake in allowing both the prosecution and Sanicki only six peremptory challenges violated state law. It did not violate the U.S. Constitution. *See Rivera*, 556 U.S. at 158. It is not this Court's role to review whether the state courts have incorrectly applied state law during a state trial. The Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). Accordingly, the Wisconsin Court of Appeals' rejection of Sanicki's complaints about the jury selection process, including the reduced number of peremptory challenges, was not an unreasonable application of federal law. Sanicki is not entitled to habeas relief on his first asserted ground for relief.

## II. Sanicki Did Not Present His Jury Instruction Challenge as a Separate Claim in His State Court Appeal.

Sanicki's second ground for habeas relief challenges the trial judge's handling of a "party to a crime" jury instruction. (ECF Nos. 1 at 7; 1-2 at 2-4.) At the close of the evidence, the trial judge agreed with Sanicki's counsel that the jury should not be given a "party to a crime" instruction because it was not supported by the evidence. (ECF No. 9-10 at 266-70.) Despite this important ruling in the defense's favor, Sanicki argues that the judge should have done more and provided a special instruction clarifying that jury could not convict Sanicki as a party to the crime. (ECF No. 1-2 at 3-4.)

The respondent insists that Sanicki has procedurally defaulted on this ground, arguing that the issue was presented in state court solely as a basis for finding his counsel ineffective and not as an independent basis for relief. (ECF No. 20 at 14-17.) The respondent further observes that Sanicki's Court of Appeals brief cited three state court cases related to this issue and all three cases considered only ineffective-assistance-of-counsel arguments. (*Id.* at 16 (citing ECF No. 9-2 at 21-26; *State v. Marcum*, 166 Wis. 2d 908, 920, 480 N.W.2d 545, 551 (Wis. Ct. App. 1992); *State v. Eckert*, 203 Wis. 2d 497, 511-13, 553 N.W.2d 539, 544-45 (Wis. Ct. App. 1996); *State v. Felton*, 110 Wis. 2d 485, 502, 329 N.W.2d 161, 169 (1983)).) And, the respondent argues, even as an ineffective-assistance claim, the Wisconsin Court of Appeals reasonably determined that Sanicki did not suffer prejudice. (ECF No. 20 at 17-18.)

In his reply, Sanicki cites two pages in his Wisconsin Court of Appeals brief asserting this claim in contexts other than his ineffective-assistance arguments.[1] (ECF No. 22 at 8-9.) He argued on appeal that the trial judge denied him a fair trial by, among a long list of asserted errors, failing "to clarify that the party to the crime language was off the table." (ECF No. 9-2 at 47.) Similarly, in requesting a new trial under Wis. Stat. §752.35, Sanicki's appellate brief cited a "litany" of errors, the seventh of which was "the jury's confusion over whether Sanicki could be convicted as a party to the crime." (*Id.* at 52.) In neither instance did Sanicki identify any controlling federal law to support his challenge to the trial judge's handling of the "party to a crime" instruction.

---

[1] Sanicki also concedes that "[w]hether or not this Court finds the direct claim of trial court error on PTAC confusion to have been fairly presented in state court, the merit of the direct claim is, and consistently has been claimed to be, one of the bases for Petitioner's ineffective assistance of counsel claim. As such, Petitioner agrees that this claim can be fully and properly addressed under the ineffective assistance of counsel rubric of *Strickland v. Washington*." (ECF No. 22 at 10.)

"A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) (citations omitted). "To avoid procedural default, a habeas petitioner must 'fairly present' a claim to each level of the state courts. Both the operative facts and controlling law must be placed before the state courts." *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013) (citations omitted).

> At bottom, we must consider whether "the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." This analysis typically focuses on four factors: (1) whether the habeas petitioner relied on federal cases that engage in constitutional analysis, (2) whether the petitioner relied on state cases that apply constitutional analysis to similar facts, (3) whether the petitioner framed the claims in terms so particular as to call to mind a specific constitutional right, and (4) whether the petition alleges a pattern of facts within the mainstream of constitutional litigation.

*Id.* (citing *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001)).

Sanicki's brief to the Wisconsin Court of Appeals did not raise unclear jury instructions as a freestanding ground for relief. The most significant discussion of this issue came in the context of his ineffective-assistance-of-counsel argument. (*See* ECF. No. 9-2 at 21-26.) In that context, after arguing that the jury could have been confused about whether "party to a crime" liability still applied, the appellate brief cited *Marcum*, 166 Wis. 2d at 920, 480 N.W.2d at 551, for the proposition that the jury returned a "patchwork" verdict that "violate[d] the due process requirement that the prosecution prove each essential element beyond a reasonable doubt." (ECF No. 9-2 at 25.) The brief's other case citations in this section included *Eckert*, 203 Wis. 2d at 511-513, 553 N.W.2d at 544-45, and *Felton*, 110 Wis. 2d at 502, 329 N.W.2d at 169, both of which concerned ineffective assistance of counsel for failing to poll the jury. (ECF No. 9-2 at 25-26.) Sanicki did not cite any federal cases that engaged in an analysis of whether the lack of a jury instruction violated his due process clause rights. Accordingly, Sanicki did not fairly present his jury confusion claim to the Wisconsin courts. He has therefore procedurally defaulted on this ground.

But, even if the Court were to excuse his procedural default, the record shows Sanicki is not entitled to habeas relief on this ground in any event. "Generally, in a habeas corpus action where the petitioner alleges constitutional error due to the trial court's refusal to allow a defense instruction, the constitutional question is limited to whether the petitioner sufficiently alleges a

'fundamental defect which inherently results in a complete miscarriage of justice.'" *Leach v. Kolb*, 911 F.2d 1249, 1257 (7th Cir. 1990) (quoting *United States ex rel. Stamps v. Hartigan*, 586 F. Supp. 1575, 1577 (N.D. Ill. 1984) (other citations omitted)). "When asked to consider if the absence of a particular jury instruction offended due process it is not sufficient that the trial court erred under state law or that the omitted instruction would have been desirable." *McAlister v. Thurmer*, No. 10-C-441, 2010 WL 3860153, at *6 (E.D. Wis. Oct. 1, 2010) (citing *Estelle*, 502 U.S. at 72). "Rather, the question the court must ask is whether, considering the context of the instructions as a whole and the trial record, the absence of the instruction 'so infected the entire trial that the resulting conviction violates due process.'" *Id.* (quoting *Estelle*, 502 U.S. at 72).

Sanicki's unreasonable speculation that the jury was confused does not plausibly allege a fundamental defect that resulted in a miscarriage of justice. The record establishes that eliminating the possibility of "party to a crime" liability was a strategic "win" for the defense. The final instructions made clear the elements the jury had to find to convict Sanicki of murder. That the jury did find these elements was not a miscarriage of justice, given the substantial credible evidence in the record.

## III. The Wisconsin Court of Appeals Reasonably Concluded That Sanicki's Trial Counsel Was Not Ineffective.

Sanicki's third ground for habeas relief is based on assertions of his trial counsel's ineffectiveness. (ECF Nos. 1 at 8; 1-2 at 4-14.) Sanicki identifies ten different areas in which he believes counsel's performance was constitutionally deficient. (*Id.*) The Wisconsin Court of Appeals considered all these claims on direct appeal, applied the standard in *Strickland v. Washington*, and determined that they lacked merit. *See Sanicki*, 816 N.W.2d 350. None of Sanicki's second-guessing of counsel's conduct warrants habeas relief under the standards set forth in 28 U.S.C. §2254.

"Under *Strickland v. Washington*'s familiar, two-pronged test for ineffective assistance of counsel, [the petitioner] must demonstrate that (1) his counsel's performance was deficient; and (2) that deficiency resulted in prejudice." *United States v. Berg*, 714 F.3d 490, 496-97 (7th Cir. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "The performance prong of Strickland requires a [petitioner] to show 'that counsel's representation fell below an objective standard of reasonableness.'" *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). To establish prejudice under Strickland, a petitioner must

"show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694).

In the habeas context, "[e]stablishing that a state court's application of *Strickland* was unreasonable under §2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105. This is because the *Strickland* and §2254(d) standards are both "highly deferential," so when both apply, federal-court review is "doubly deferential." *Id.*; *Cullen v Pinholster*, 563 U.S. 170, 190 (2011). Accordingly, the question before this Court "is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

### A. Recasting Sanicki's First Two Grounds for Habeas Relief as Ineffective-Assistance Claims Does Not Give Them Merit.

Sanicki contends his counsel was constitutionally ineffective in failing to object to the jury selection issues and "party to a crime" instruction on which Sanicki bases his first two habeas grounds. (ECF Nos. 1 at 8; 1-2 at 4.) The Court has already analyzed these claims on the merits and concluded that the Wisconsin Court of Appeals reasonably applied federal law. The claims do not have greater merit when cast as ineffective-assistance-of-counsel claims.

The Wisconsin Court of Appeals concluded that counsel's failure to remove jurors Tutaj and Jaeger and failure to object to the amount of peremptory challenges did not result in prejudice because the jury that was empaneled was not biased. (ECF No. 9-5 at 5.) The appellate court reviewed trial counsel's concessions that his exercise of only six strikes was "an oversight" and that Jaeger probably was not a good juror due to his ties to law enforcement. (*Id.*) But on its review of the record, the appellate court concluded that Sanicki could not establish that either Tutaj or Jaeger was biased against him (*id.*); accordingly, his ineffective-assistance claim failed to establish prejudice.

This determination was not an unreasonable application of *Strickland*, 466 U.S. 668. As reviewed above, the trial court erred in only allowing each side six—instead of seven—peremptory strikes. But the record does not establish that any juror—Tutaj, Jaeger, or anyone else—was biased against Sanicki. The Wisconsin Court of Appeals concluded as much, and its conclusion that counsel's performance did not result in prejudice was within the bounds of §2254(d)'s reasonableness.

Sanicki's complaints about his counsel's failure to insist on a clarifying instruction on the "party to a crime" issue likewise fails to warrant habeas relief. The Court of Appeals explained that in opening instructions the trial judge indicated that Sanicki was charged as party to a crime. (ECF No. 9-5 at 6.) The court emphasized, however, that during closing instructions the trial judge informed the jury "that the Information charged 'the defendant did cause the death of another human being with intent to kill that person.'" (*Id.*) The trial judge did not include any final instruction on a theory of "party to a crime" liability, having concluded that that theory was not supported by the evidence. (*Id.*) The Court of Appeals rejected Sanicki's claim that the jury could have been confused by the introductory instructions. (*Id.*) It reasoned that "the chance that the jury recalled the PTAC language in the Information from five days earlier was virtually nonexistent." Accordingly, the Court of Appeals concluded counsel had not been constitutionally deficient. (*Id.*)

This determination was not an unreasonable application of federal law. The prosecution presented ample evidence that Sanicki pulled the trigger to kill Mike Smith and did not present any evidence that Sanicki played an accomplice role or that he was an inactive participant. The closing arguments also explicitly clarified that the jury was not to decide whether Sanicki was a party to this crime. While it is true the trial judge did not affirmatively instruct the jury on "party to a crime" liability, he did not instruct the jury at all about a possible "party to a crime" conviction. The Wisconsin Court of Appeals was reasonable in concluding that it was unlikely the jury remembered the opening instructions well enough to notice that the opening instruction on the Information was different than the closing instruction on the Information.

### B. The Wisconsin Court of Appeals Reasonably Rejected Sanicki's Ineffective-Assistance Claims Concerning Counsel's Handling of the Evidence.

Sanicki's ineffective-assistance claim is also based on his counsel's handling of several evidentiary issues. More specifically, Sanicki insists his counsel should have introduced a video showing James Behnke's earlier confession to and re-enactment of the Smith murder. (ECF No. 1-2 at 4-5.) He also faults counsel for not calling a witness, Matthew Geldmeyer, to testify that Behnke had previously admitted to the shooting. (*Id.* at 5-7.) Finally, Sanicki complains that counsel failed to introduce evidence that Sanicki had a different gun (a .20-gauge shotgun) in his apartment, rendering it unnecessary for him to have retrieved the murder weapon (a .16-gauge shotgun) from his father's house. (*Id.* at 7-8.)

With respect to the video evidence, the Wisconsin Court of Appeals concluded that the recording was cumulative evidence because "the jury knew that Behnke had confessed in the past. It is not ineffective assistance of counsel to fail to provide cumulative evidence." (ECF No. 9-5 at 7.) This was not an unreasonable conclusion. Behnke testified that the videotape substantially comported with the demonstration he performed during his courtroom testimony. (ECF No. 9-8 at 168.) And the jury heard from both Behnke and police officers that Behnke had initially confessed to committing the crime by himself. (*Id.*) Sanicki's assertion that this video "would have been worth a thousand words" is pure speculation. (ECF No. 1-2 at 5.) There is no reason to believe that the jury would have been persuaded by a videotape recreating the scene when extensive testimony concerning the scene of the crime had already been presented. The Court of Appeals' finding that counsel did not deficiently perform in this regard was reasonable.

The Wisconsin Court of Appeals also addressed counsel's failure to call Matthew Geldmeyer, whom it identified as "a friend of Behnke's who would have testified that Behnke confessed his culpability to him." (ECF No. 9-5 at 7.) The appellate court concluded counsel had not been deficient in failing to call Geldmeyer because his testimony would also have been cumulative. (*Id.*) Based on the record, this too was a reasonable conclusion. Sanicki argues that "[i]n an affidavit, as well as in testimony at an earlier post-conviction hearing where only the issue of new evidence was permitted to be argued, Geldmeyer stated that Behnke had confessed to him and that Geldmeyer could have attested to that fact at [Sanicki's] trial if the defense had called him to do so." (ECF No. 1-2 at 6.) But Sanicki does not explain how this additional, cumulative testimony would have made a difference. The jury heard that Behnke had confessed to the police about his sole involvement in the case. While Sanicki says that Geldmeyer's testimony would have bolstered the credibility of *that* version of the story—i.e., that it was Behnke acting alone— the jury had already heard Behnke describe his original version of events multiple times. The Court of Appeals' conclusion was not outside the bounds of §2254(d)'s reasonableness.

Finally, the Wisconsin Court of Appeals concluded that Sanicki had not shown prejudice related to the evidence of his possession of a .20 gauge shotgun. (ECF No. 9-5 at 7-8.) It stated that Sanicki had not explained how the evidence would have altered the outcome of the trial, because, even if the evidence had been admitted, "the State easily could have undermined [Sanicki's] argument by asserting that [he] purposefully used a different kind of gun than the one he was known to possess." (ECF No. 9-5 at 8.) The state appellate court's conclusion that Sanicki

had not shown prejudice was reasonable. Indeed, as the Wisconsin Court of Appeals explained, it would have been easy for the state to point out the logic of Sanicki's not using as a murder weapon a gun that everybody knew he owned.

### C. Trial Counsel Was Not Ineffective in Failing to Secure Sanicki's Attendance at Procedural Conferences.

Sanicki next claims his counsel was ineffective for not securing Sanicki's presence at two conferences during trial—a conference over the exhibits to be sent back to the jury and a hearing on jury instructions. (ECF No. 1-2 at 8-9.) The Wisconsin Court of Appeals concluded that Sanicki had not shown he was in fact absent from either "event." It further held that even if Sanicki had been absent, he was not prejudiced. (ECF No. 9-5 at 8-9.) As to the first conference, the appellate court explained that deciding which exhibits to send to the jury lay within the trial court's discretion and that the statements Sanicki wanted to send back—Behnke's written statements— would not have resulted in a different outcome. (*Id.* at 9.) With respect to the jury instruction conference, the Court of Appeals rejected Sanicki's assertions that he could have inspired his counsel to participate more fully as too vague and undeveloped. (*Id.*)

The appellate court's rejection of this ineffective-assistance claim was reasonable. The Supreme Court has said that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). "However, the Supreme Court has not held that either the Sixth Amendment or the due process clause confer a right to be present at a jury instruction conference." *Pace v. Pfister*, No. 12-cv-1272-DRH-CJP, 2014 WL 5023234, at *8 (S.D. Ill. Oct. 7, 2014); *see also Bryant v. United States*, No. 3:15-cv-2158, 2016 WL 2930872, at *12 (C.D. Ill. May 19, 2016) (denying habeas claim that petitioner had a right to be present because "[h]ere, nothing suggests that [petitioner's] attorneys would have been likely to consult [petitioner] on the jury's question of law or that any views from [the petitioner] on the issue would have changed the judge's answer to the jury's question"). Moreover, even if Sanicki had a right to be present at these procedural conferences, the Wisconsin Court of Appeals reasonably concluded that Sanicki's absence did not prejudice him.

### D. The Wisconsin Court of Appeals Reasonably Rejected Sanicki's Complaints About Trial Counsel's Failure to Pursue Various Objections.

Sanicki also faults trial counsel for counsel's handling of several objections or possible objections during trial. (ECF No. 1-2 at 9-13.) Sanicki first complains that counsel failed to object on hearsay grounds to various testimony concerning out-of-court statements Behnke had made to other witnesses. (*Id.* at 9-10.) Sanicki next argues that counsel should have followed up more aggressively after objecting to a prosecution misstatement of the testimony during closing arguments. (*Id.* at 10-11.) Last, Sanicki insists counsel was constitutionally deficient in failing to challenge prosecutorial misconduct. (*Id.* at 11-13.)

As to the alleged hearsay testimony, the Wisconsin Court of Appeals explained that several of the items of testimony that Sanicki identifies were not in fact hearsay under Wisconsin law. (ECF No. 9-5 at 9.) Testimony from Behnke's parents that was consistent with Behnke's own in-court testimony was non-hearsay under Wis. Stat. §908.01(4)(a)2. (*Id.*) Similarly, testimony from a police investigator that set the stage for the next step in his investigation was not hearsay because it was not offered for the truth of the matter asserted. (*Id.*) The conclusion of the Court of Appeals that counsel was not ineffective for not making these objections—which would have been losing objections under state law—was reasonable.[2] (*Id.* at 9-11.)

The state appellate court also addressed and rejected Sanicki's complaints about his counsel's handling of an inaccurate reference to testimony during the prosecutor's closing argument. (*See* ECF No. 9-5 at 10-11.) During his closing, the prosecutor referred to testimony from Sanicki's brother about seeing Sanicki and Behnke retrieve a gun from Sanicki's father's house. (ECF No. 9-10 at 285.) During trial, Sanicki's brother testified that he recalled Sanicki and Behnke's retrieving a gun from the house "in winter," (ECF No. 9-10 at 122-23), but in his closing the prosecutor argued the brother had said the retrieval took place "three or four months prior to" July of 1991. (ECF No. 9-10 at 285.) Sanicki's counsel objected that this was a fact not in evidence. (ECF No. 9-10 at 354.) The prosecutor responded by trying to bypass the issue altogether, continuing, "In any event, [the brother] testified that sometime prior these guys were over there to pick up a gun and there was only one time that this ever occurred, and when it did

---

[2] Sanicki also complains about a single leading question—the prosecutor asked a witness whether he had ever heard the phrase "if looks could kill." (ECF No. 1-2 at 10.) The Wisconsin Court of Appeals reasonably concluded that this one comment (within the context of a twenty-five-witness trial) did not undermine its faith in the trial's outcome. (ECF No. 9-5 at 10.) Indeed, the comment was foundational and not improper leading.

occur, the two of them were together." (ECF No. 9-10 at 354-55.)  Sanicki insists that his counsel's objection was insufficient and that counsel should have pursued this objection further.  (ECF No. 1-2 at 10-11.)

The Wisconsin Court of Appeals reasonably rejected this claim.  The record shows that Sanicki's trial counsel affirmatively objected to the statement, causing the prosecutor to revise his argument.  As the state appellate court explained, for the prosecution, the important point was that Mark Sanicki (James Sanicki's brother) remembered both James Sanicki and Behnke coming to retrieve the gun *together*.  This contradicted James Sanicki's defense theory that it was just Behnke who retrieved the gun.  The Wisconsin Court of Appeals reasonably concluded that James Sanicki had not shown prejudice sufficient to shake confidence in the reliability of the trial on this basis.

Sanicki's complaints about counsel's failure to object to prosecutorial misconduct also fail to warrant habeas relief.  (*See* ECF No. 1-2 at 11-13.)  The Wisconsin Court of Appeals rejected these arguments as "fatally undeveloped."  (ECF No. 9-5 at 11.)  Sanicki now clarifies that he believed the prosecutor to have impermissibly commented on his right to remain silent; to have vouched for witnesses; to have impermissibly characterized Mark Sanicki's testimony; and to have improperly commented on Behnke's plea deal as "good."  (ECF No. 1-2 at 11-12.)  James Sanicki says that these instances of prosecutorial misconduct and his counsel's failure to object to them "allowed the jury to absorb this material unfiltered[,] and . . . so infected the proceedings with unfairness as to deny [him] a fair trial and due process."  (*Id.* at 13.)

But even setting aside Sanicki's failure to develop these issues in state court, his complaints are without merit.  The record does not support Sanicki's assertions that the prosecutor improperly vouched for witness testimony or impermissibly commented on Sanicki's right to remain silent.  The items cited are all within the bounds of legitimate prosecutorial conduct.  *See Darden v. Wainwright*, 477 U.S. 168 (1986); *Pisciotti v. Washington*, 143 F.3d 296, 301 (7th Cir. 1998).  Moreover, whether to object to such items is subject to counsel's strategic judgment.  *Cf. Lambert v. McBride*, 365 F.3d 557, 564 (7th Cir. 2004) (defense counsel's failure to object to prosecutor's impassioned closing arguments that arguably "pushed the bounds of zealous advocacy" did not constitute deficient performance).  As the Wisconsin Court of Appeals correctly noted, "[m]atters of reasonably sound strategy [like whether to object during closing argument], without the benefit of hindsight, are 'virtually unchallengeable,' and do not constitute ineffective assistance."  (ECF No. 9-5 at 11 (quoting *Strickland*, 466 U.S. at 690-91).)

### E. Sanicki's Counsel Was Not Ineffective in Failing to Object to Sanicki's Sentence.

Sanicki's final ineffective-assistance argument is that his counsel failed to object to the excessive parole eligibility date the trial court imposed at sentencing. (ECF No. 1-2 at 13-14.) Sanicki complains that he was treated differently than Behnke, whose sentence made him eligible for parole in 13.5 years (in 2005), while the court ordered Sanicki ineligible for parole until 2075. (*Id.* at 13.) Sanicki insists his counsel should have objected that the disproportionality of the parole eligibility dates violated both due process and the Eighth Amendment's prohibition on cruel and unusual punishment. (*Id.*)

It is not clear that Sanicki raised this issue as an ineffective-assistance claim in state court. The Wisconsin Court of Appeals addressed and rejected on the merits Sanicki's constitutional challenge to his sentence. (ECF No. 9-5 at 13.) Regardless, because, as discussed below, the appellate court correctly rejected on the merits Sanicki's constitutional challenge to his sentence, there was no constitutional violation in Sanicki's sentence. Sanicki was not prejudiced and his counsel therefore could not have been constitutionally ineffective in failing to object on this ground. *See Strickland*, 466 U.S. at 692 ("[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.").

### IV. The Wisconsin Court of Appeals' Decision Rejecting Sanicki's Claim That His Sentence Was Disproportionate Was Not Unreasonable.

Sanicki's fourth ground for habeas relief is a challenge to his sentence. He asserts that his sentence was "at odds with the basis for the jury verdict." (ECF No. 1 at 9.) Piggy-backing on his prior challenge to the confusion he presumes arose from the court's rejection of the prosecution's "party to a crime" instruction, Sanicki argues that "some or all of the jurors believed they only had to believe I played a vague accomplice role in the murder in order to convict me." (*Id.*) He insists that his sentence was thus "unduly harsh, cruel, and unusual." (*Id.*) He further argues that his sentence should have been similar or identical to the sentence imposed on Behnke, because the jury "likely" convicted Sanicki on the same "party to a crime" theory to which Behnke pled guilty. (ECF No. 1-2 at 15-16.)

The Wisconsin Court of Appeals reasonably found nothing disproportional about Sanicki's sentence or parole eligibility date. (ECF No. 9-5 at 13.) The Supreme Court has recognized that the Eighth Amendment contains a "narrow proportionality principle," and that "[e]mbodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for

crime should be graduated and proportioned to [the] offense.'" *Graham v. Florida*, 560 U.S. 48, 59-60 (2010) (quoting *Weems v. United States*, 217 U.S. 349, 367 (1910)). More plainly, "[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing v. California*, 538 U.S. 11, 23 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)). To determine whether a sentence is grossly disproportionate, "[a] court must begin by comparing the gravity of the offense and the severity of the sentence." *Graham*, 560 U.S. at 60 (citing *Harmelin*, 501 U.S. at 1005). "'In the rare case in which this threshold comparison . . . leads to an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id.* (quoting *Harmelin*, 501 U.S. at 1005)).

Sanicki's claim does not get past the first step. The jury convicted Sanicki of first-degree intentional homicide. For this most heinous of crimes, the State of Wisconsin imposes a maximum sentence of life imprisonment. *See* Wis. Stat. §§939.50, 940.01. The trial judge sentenced Sanicki to the same sentence contemplated by the Wisconsin legislature and, although Sanicki says that the sentencing judge should have ordered him eligible for parole before 2075, he cites no law for this argument. The Wisconsin Court of Appeals noted that the parole eligibility date was a determination the Wisconsin legislature had placed solely in the discretion of the sentencing judge. That decision did not run contrary to any federal laws as set forth in the Supreme Court's Eighth Amendment precedents on excessive sentences. And because the Court finds no argument for asserting that the trial judge impermissibly sentenced Sanicki to extended parole, the Court cannot find that his counsel performed deficiently by failing to raise it. *See Washington v. Boughton*, 884 F.3d 692, 701 (7th Cir. 2018) ("[A]n attorney is not ineffective for failing to raise a meritless argument."). The Court will deny this ground for habeas relief.

V. **Sanicki's "Interests of Justice" Claim Cannot Form a Basis for Relief Under §2254.**

Sanicki's final ground for habeas is that "the Wisconsin Court of Appeals' and Supreme Court of Wisconsin's failures to exercise their power of discretionary reversal in the interests of justice were based on an unreasonable determination of the facts in light of the evidence presented." (ECF No. 1-2 at 16). In his brief, he argues he is entitled to habeas relief because the state courts thus violated his due process rights by unreasonably failing to exercise their discretionary powers to grant him a new trial in the interest of justice under Wis. Stat. §752.35 and

751.06. (ECF No. 16 at 34-35.) Sanicki insists reversal was required because the "real controversy was not fully tried." (*Id*. at 34.)

Section 752.35 of the Wisconsin Statutes provides the Wisconsin Court of Appeals the power to reverse a trial court judgment or grant a new trial "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." Section 751.06 gives the Wisconsin Supreme Court a similar power. Sanicki's attempt to raise the state appellate court's refusal to invoke this discretionary power is not a basis for habeas relief. As framed by Sanicki, this ground presents, at best, an issue of state law that this Court cannot review on habeas. *See, e.g.*, *Estelle*, 502 U.S. at 67-68 ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). In other words, this Court does not have the authority to grant Sanicki a discretionary reversal under the cited Wisconsin state statute even if it agreed that a fundamental miscarriage of justice had occurred. This ground for habeas fails too.

## CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the Court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The Court declines to issue a certificate of appealability because no reasonable jurist could debate that Sanicki has not stated a ground for habeas relief under 28 U.S.C. §2254.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Sanicki's petition for writ of habeas corpus (ECF No. 1) is **DENIED** and this case is **DISMISSED**. The Clerk of Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that a certificate of appealability shall not issue.

Dated at Milwaukee, Wisconsin on September 1, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge